IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:16-CV-11-F

| | |
|---|---|
| KIMBERLY ANNETTE RIGGS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, DE-19] pursuant to Fed. R. Civ. P. 12(c). Claimant Kimberly Annette Riggs ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on June 10, 2009, alleging disability beginning December 1, 2008. (R. 12, 249-57). Both claims were denied initially and upon reconsideration. (R. 12, 119-22, 146-50, 155-72). A hearing before the

Administrative Law Judge ("ALJ") was held on June 20, 2011, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 88-118). On August 2, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 123-41). On January 7, 2013, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 142-45). A second administrative hearing before ALJ Bowling was held on April 29, 2014, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 50-87). On July 15, 2014, the ALJ issued a decision denying Claimant's claims. (R. 9-37). On November 30, 2015, the Appeals Council incorporated additional evidence into the record and denied Claimant's request for review of ALJ Bowling's decision. (R. 1-6). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

2

determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§

3

404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by: (1) failing to include her nebulizer use in the RFC; (2) failing to resolve evidentiary conflicts about Claimant's ability to have frequent contact with coworkers and maintain a schedule; and (3) improperly discounting witness statements. Pl.'s Mem. [DE-17] at 3-22.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: bioplar disorder, depression, post-traumatic stress disorder ("PTSD"), history of fibromyalgia, chronic obstructive pulmonary disorder ("COPD"), sleep apnea, and obesity. *Id.* The ALJ also found Claimant had nonsevere impairments of irritable bowel syndrome, reflux esophagitis, hyperlipidemia, a kidney stone and urinary urgency, a benign follicular lymphoid nasopharyngeal mass, and migraine headaches. (R. 15-16). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, and moderate limitations in social functioning and concentration, persistence, and pace with no episodes of

4

decompensation. (R. 17-18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the ability to lift or carry up to 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for up to six hours in an eight-hour workday with a sit/stand option at 30 to 45 minute intervals; can occasionally crawl and climb ladders, ropes or scaffolds; and occasionally use the bilateral upper extremities for overhead reaching, in addition to fine and gross manipulations. (R. 18). Claimant must avoid concentrated exposure to pulmonary irritants (fumes, odors, gases, and poor ventilation), and workplace hazards (moving or dangerous machinery and unprotected heights); can perform simple, routine, repetitive tasks in that she can apply common sense and understanding to carry out oral, written, and diagrammatic instructions; and can have frequent contact with coworkers and occasional contact with the public in a low stress work setting, defined as having few changes in the work setting and no assembly-type production requirements. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 20-28).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a cashier and a hospital cleaner. (R. 28). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

numbers in the national economy. (R. 29-30).

## V. DISCUSSION

### A. The ALJ's RFC Determination

Claimant contends that the ALJ's RFC assessment failed to include restrictions on her ability to work due to the use of her nebulizer machine. Pl.'s Mem. [DE-17] at 3-10. In response, the Commissioner argues that substantial evidence supports the ALJ's RFC assessment where the record evidence did not show that Claimant needed to use the nebulizer. Def.'s Mem. [DE-20] at 6-8.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-

6

8p, 1996 WL 374184, at *7.

The ALJ must also consider the effects of a claimant's treatment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (noting that the ALJ must consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or [has] taken to alleviate [his] main or other symptoms" in evaluating a claimant's symptoms); *see also* S.S.R. 96-7p, 1996 WL 374186, at *3, 7-8 (July 2, 1996). Additionally, the ALJ must consider this same evidence while assessing a claimant's RFC. *See* S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (discussing how a claimant's RFC must take into account "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)"). Failure to appropriately consider a claimant's treatment may constitute error requiring remand. *See Fox v. Colvin*, No. 4:13-CV-53-D, 2014 WL 773714, at *10-12 (E.D.N.C. Feb. 5, 2014) (unpublished) (noting, during a discussion of the ALJ's consideration of opinion evidence, that the ALJ erred by failing to consider how the intensity of the claimant's treatment regimen, which included biweekly visits to his doctor and three home visits each week, and the side effects of the claimant's medications impacted his ability to work), *adopted by* 2014 WL 773693 (E.D.N.C. Feb. 25, 2014); *Hickman v. Colvin*, No. 4:12-CV-288-FL, 2014 WL 652545, at *6 (E.D.N.C. Feb. 19, 2014) (unpublished) (holding that the ALJ's failure to recognize and address the effects of the claimant's medication "represent[ed] a violation of her fundamental duty to consider all the relevant evidence in the case" and constituted error requiring remand).

With regard to Claimant's nebulizer use, the ALJ noted Claimant's hearing testimony on the subject. (R. 19) (discussing Claimant's testimony about using a nebulizer and rescue inhaler due to her COPD and how that impacted her at her last job: "[s]he indicated that one of the reasons that she

7

was unable to continue at Piggly Wiggly was an inability to use her nebulizer, partially out of embarrassment, but also because she gets the shakes and needs to lie down after using it."). In summarizing the medical evidence, the ALJ also discussed Claimant's nebulizer use. (R. 20-21) (discussing an August 6, 2007 treatment note where Claimant was prescribed albuterol for symptoms of coughing, wheezing, and chest tightness); (R. 21) (discussing a November 2, 2010 treatment note where Claimant reported daily nebulizer use); (R. 21) (discussing a December 8, 2010 treatment note where Claimant reported receiving a prescription for a Xopenex nebulizer four weeks earlier when she was diagnosed with bronchitis and received nebulizer treatment during the appointment); (R. 22) (discussing a September 13, 2012 treatment note where Claimant reported improvement of chest pain, congestion, and shortness of breath with nebulizer use and received a refill of Xopenex nebulizer solution). The ALJ also discussed a third-party statement which referenced Claimant's nebulizer use. (R. 28) (describing a statement from Amanda Cardwell, who noted that Claimant gets the shakes when using her nebulizer but affording little weight to that statement where it was not made by a medical provider, relied upon Claimant's subjective reports, and did not comport with medical record evidence).

In summarizing his conclusion regarding Claimant's credibility, the ALJ stated as follows:

> [a]s has been found above, the claimant does have severe impairments that limit her ability to perform work related functions. However, the issue here is not whether the claimant can be restored to full health, or even rendered free from pain. Rather, an individual's [RFC] is what the individual can still do despite his or her limitations. Viewed in this light, to the extent that the claimant alleges limitations greater than those set forth in the current [RFC], those claims are not supported by the evidence.
>
> In terms of the claimant's physical issues, . . . [w]hile the claimant does have diagnoses for asthma and COPD, it is noted that the only pulmonology examination appearing of record, from Dr. Dietrich, did not produce a diagnosis for COPD and spirometry testing indicated only borderline restriction. The undersigned also notes

8

that during a September 13, 2012 appointment with Coastal Carolina Health Care, the claimant reported that she had never been seen by a pulmonologist, despite the fact that her last examination by Dr. Dietrich had been less than a year earlier. Furthermore, while the record reflects multiple recommendations for smoking cessation, as of the hearing date the claimant continued to smoke.

(R. 25-26). There is no further discussion, however, of Claimant's nebulizer use and the side effects associated with her nebulizer treatments.

At the hearing held on April 29, 2014, Claimant testified that she uses her nebulizer every four hours. (R. 59). Her treatment takes 20 minutes, and then Claimant needs about an hour to recover afterwards—specifically, she testified that after using her nebulizer, "I get the shakes real bad and I have to sleep for about an hour to sleep it off." *Id.* Claimant testified that she used Xopenex at one time, but was currently taking albuterol, which she received for free from her doctor at the Merci Clinic. (R. 66-67). Indeed, even after Claimant was evaluated by Dr. Dietrich on September 26, 2011, who opined that Claimant did not have COPD, the medical record continues to reflect prescriptions for use of a nebulizer. *See* (R. 790-93) (November 10, 2011 treatment note from Dr. Dietrich, listing a Xopenex nebulizer under Claimant's medications and directing that it be used every four hours as needed for COPD/asthma); (R. 852-53) (September 13, 2012 treatment note prescribing a Xopenex nebulizer for use every four to six hours as needed); (R. 877) (March 19, 2014 treatment note listing an albuterol nebulizer used as needed among Claimant's medications). The ALJ failed to evaluate Claimant's testimony about her nebulizer use and the time it takes her to recover afterwards, and consequently, it is unclear what portions of Claimant's testimony and the record evidence he found to be credible or not credible and why. While the Commissioner offers several explanations as to why Claimant does not need to use a nebulizer, Def.'s Mem. [DE-20] at 6-8, it is for the ALJ to make this determination in the first instance and the reviewing court cannot

9

engage in post-hoc rationalizations offered in support of an administrative agency decisions. *Hornal v. Berryhill*, No. 7:15-CV-00266-F, 2017 WL 634697, at *3 (E.D.N.C. Feb. 16, 2017) (unpublished) (citation omitted).

The ALJ's statement that "to the extent that the claimant alleges limitations greater than those set forth in the current [RFC], those claims are not supported by the evidence" (R. 25) is insufficient in that it does not allow for substantial evidence review. *See Fox v. Colvin*, 632 F. App'x 750, 754 (4th Cir. Dec. 17, 2015) (unpublished) (per curiam) ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.") (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted) & citing *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 260 (4th Cir. 1977) (the ALJ failed to include an adequate discussion "in what amount[ed] to no more than a bare recital that [the ALJ] considered the evidence.")). Indeed, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford*, 734 F.3d at 295; *see also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (per curiam) (concluding that an ALJ is required to build an "accurate and logical bridge" between the evidence and his conclusions) (citation omitted). Remand for further proceedings is the appropriate remedy in cases such as this where "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford*, 734 F.3d at 295. The Fourth Circuit has made clear that it is not the role of the court to remedy such failures by engaging in the required analysis in the first instance. *See Fox*, 632 F. App'x at 755 ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford*, 734

10

F.3d at 296 (citing *Hancock v. Astrue*, 667 F.3d 472 (4th Cir. 2012)). Accordingly, it is recommended that the case be remanded so that the ALJ may properly consider the evidence demonstrating the effects of Claimant's nebulizer treatments and explain whether or not Claimant has any resulting limitations on her ability to work as a result thereof. *See Hickman*, 2014 WL 652545, at *6 (holding that the ALJ's failure to recognize and address the effects of the claimant's medication "represent[ed] a violation of her fundamental duty to consider all the relevant evidence in the case" and constituted error requiring remand).

## B. The ALJ's Consideration of Claimant's Ability to Interact with Coworkers and Complete a Normal Workday

Claimant contends that the ALJ erred by finding that she could have frequent contact with coworkers and is able to complete a normal workday, arguing that the ALJ failed to resolve conflicting medical opinions, improperly evaluated her credibility, and improperly weighed witness statements. Pl.'s Mem. [DE-17] at 10-22. The Commissioner argues in response that substantial evidence supports the ALJ's findings. Def.'s Mem. [DE-20] at 8-14. The court need not resolve this issue in light of the remand required on other grounds, but where the ALJ on remand will be considering Claimant's credibility and evaluating the medical record evidence and witness statements related to her nebulizer use, this issue should also be addressed should it arise in the remand proceedings.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-16] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] be DENIED and the case be REMANDED to the Commissioner for further proceedings

11

consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 16, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 2nd day of March, 2017.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

12

Case 4:16-cv-00011-F   Document 22   Filed 03/02/17   Page 12 of 12