IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:16-CV-00011-F

| | |
|---|---|
| KIMBERLY ANNETTE RIGGS, )<br>    Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL,[1] )<br>Acting Commissioner of Social Security, )<br>    Defendant. ) | **ORDER** |

Before the court are the following:

(1) the parties' cross Motions for Judgment on the Pleadings [DE-16, -19], pursuant to Rule 12(c) of the Federal Rules of Civil Procedure;

(2) the Memorandum and Recommendation ("M&R") [DE-22] of United States Magistrate Judge Robert B. Jones, Jr.; and

(3) Defendant's Objection [DE-23] to the Magistrate Judge's M&R and Plaintiff's Response [DE-24].

The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, this court ADOPTS the findings and recommendations of the Magistrate Judge, Plaintiff's Motion for Judgment on the Pleadings [DE-16] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] is DENIED, and this case is REMANDED to the Commissioner for further proceedings.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill, Acting Commissioner of Social Security, has been added as a party. Carolyn W. Colvin's term expired on January 20, 2017, and she has been terminated as a party.

## I. DISCUSSION

### A. The Magistrate Judge's M&R

#### 1. Standard of Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This court is charged with making a *de novo* determination of those portions of the recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). In the absence of a timely-filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

On March 2, 2017, the Magistrate Judge issued a M&R, in which he recommended that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] be DENIED, and this case be REMANDED to the Commissioner for further proceedings. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the M&R and the consequences if they failed to do so. On March 16, 2017, Defendant filed an Objection [DE-23] to the Magistrate Judge's M&R. Plaintiff filed a Response [DE-24] on March 23, 2017.

### 2. Defendant's Objection

**a. Defendant argues that the Magistrate Judge erred by recommending that the case be remanded.**

Defendant argues that the Magistrate Judge erred by recommending that the case be remanded to allow the Administrative Law Judge ("ALJ") to explain why he did not credit Plaintiff's allegations that she required the use of her nebulizer[2] every four hours and it takes twenty minutes to recover from each treatment. *See* Objection [DE-23] at 3-7. Defendant further argues that the Magistrate Judge's conclusion was error because the ALJ gave sufficient reasons for not crediting Plaintiff's allegations. *Id.* at 3. Finally, Defendant argues that her explanation was not an impermissible post-hoc explanation because she merely addressed why substantial evidence supported the ALJ's determination. *Id.* at 4.

Residual functional capacity ("RFC") is the measurement of the most a claimant can do on a regular and continuing basis despite his limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *Glass v. Comm'r*, No. 4:15CV46, 2017 WL 836859, at *2 n.2 (W.D. Va. Feb. 15, 2017); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The ALJ is to determine RFC only after considering all the relevant evidence of a claimant's impairments and any related symptoms, such as pain. *Hines*, 453 F.3d at 562-63. If a claimant retains the RFC to perform his

---

[2] "A nebulizer is a machine that administers inhaled medications. An air compressor delivers a stream of medicated air to the patient's lungs through a mouthpiece or mask." *Hincher v. Barnhart*, 362 F.Supp. 2d 706, 713 n.2 (W.D. Va. 2005).

3

past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At her hearing before ALJ Bowling, held on April 29, 2014, Plaintiff testified that she stopped working at Pigggy Wiggly, her last employer, because she couldn't use her nebulizer at work. (R. 58.) Plaintiff explained that she couldn't use her nebulizer at work, in part, because she was embarrassed about using it. (Tr. 59.) Plaintiff further explained that she could not use her nebulizer at work because the breaks she got did not allow her to take the nebulizer treatment and lay down for an hour. *Id.*

Plaintiff testified that when she uses her nebulizer, she gets the shakes "real bad" and has to sleep it off for about an hour. *Id.* Plaintiff explained that she typically uses her nebulizer every four hours, and the treatment itself takes about twenty minutes. *Id.* Plaintiff testified that she previously put Xopenex in her nebulizer, but she now puts Albuterol in it. (R. 67.) Plaintiff explained that she gets Albuterol from Merci Clinic. (R. 66-67.)

In his July 15, 2014 Decision, the ALJ found as follows: Plaintiff's chronic obstructive pulmonary disease ("COPD")[3] was a severe impairment[4] at step two in the sequential evaluation. (R. 15.) Plaintiff's COPD did not meet or medically equal a listed impairment. (R. 16.)

Plaintiff's testimony was that she has COPD and uses both a nebulizer and a rescue inhaler. (R. 19.) One of the reasons Plaintiff was unable to continue at Piggly Wiggly was an

---

[3] COPD is "characterized by the progressive development of airflow limitation that is not fully reversible." *Bishop v. Colvin*, No. 3:13CV94, 2013 WL 6913246, at *3 n.2. (E.D. Va. Dec. 30, 2013) (citation omitted).

[4] A "severe impairment" is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities. *Deboard v. Colvin*, No. 3:16-CV-02661, 2017 WL 510743, at *2 (S.D. W.Va. Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

4

inability to use her nebulizer. *Id.* Plaintiff was unable to use her nebulizer at Piggy Wiggly in part out of embarrassment and in part due to the shakes and a need to lie down afterward. *Id.* Plaintiff testified that she is unable to do most housework and yard work because of her breathing difficulties and lack of endurance. *Id.* Plaintiff admitted she continues to smoke, despite the fact that her doctors have advised her to quit. *Id.* Plaintiff reports that she has tried to quit smoking in the past, using Wellbutrin, Chantix, and nicotine patches. *Id.*

With respect to Plaintiff's respiratory impairments, the ALJ noted the record revealed that she presented at the Emergency Department of Wayne Memorial Hospital on August 6, 2007 with complaints of headache, nausea, and dizziness. (R. 20.) It was noted that Plaintiff was seen just five days earlier and given Albuterol for coughing, wheezing, and chest tightness. (R. 20-21.) Plaintiff reported smoking one to two packs of cigarettes per day and was observed to have mild expiratory wheezing throughout. (R. 21.) A subsequent medical note from September 12, 2007 reveals that Plaintiff continued to report a chronic cough, but she denied chest pain, shortness of breath, nausea, vomiting, or other symptoms. *Id.*

Plaintiff had additional visits to a mobile clinic in 2007 and 2008 for coughing, expiratory wheezing, and similar symptoms. *Id.* During those visits, Plaintiff received multiple recommendations to quit smoking. *Id.* A medical note from January 21, 2009 reveals that Plaintiff had occasional expiratory wheezing, yet it was noted that she was not using her inhaler. *Id.*

On November 2, 2010, Plaintiff saw Dr. Hyppolite. *Id.* At that time, it was noted that Plaintiff had been diagnosed with acute bronchitis a week earlier and was using her nebulizer daily. *Id.* On December 8, 2010, Plaintiff was seen by Dr. Harmon for cough, congestion, and

5

shortness of breath. *Id.* Plaintiff was given Prednisone, three doses of DuoNeb, and one Singulair nebulizer. *Id.*

On September 19, 2011, Plaintiff was seen as a new patient at Physicians East, P.A. *Id.* It was noted that Plaintiff had a diagnosis for COPD. *Id.* On September 26, 2011, Plaintiff underwent a pulmonary consultation with Dr. Dietrich. *Id.* At that time, Plaintiff had been a half-pack to a pack a day smoker for twenty-five years with several unsuccessful attempts at cessation. *Id.* Plaintiff reported shortness of breath with any activity. *Id.* Dr. Dietrich found no evidence of COPD, but some air trapping might be present. (R. 21-22.) Dr. Dietrich suspected that tobacco cessation would make a big improvement in Plaintiff's condition. (R. 22.) A nicotine inhaler was prescribed for smoking cessation, but Plaintiff did not pick up the inhaler due to cost. *Id.* Plaintiff saw Dr. Dietrich again on November 10, 2011. *Id.* At that time, Plaintiff continued to smoke. *Id.*

On September 13, 2012, Plaintiff was seen at Coastal Carolina Health with complaints of sinus congestion that led to chest pain, congestion, and shortness of breath. *Id.* It was noted that Plaintiff's shortness of breath was improved with her nebulizer. *Id.* Plaintiff's chest x-rays and sinus x-rays were negative. *Id.*

In a statement from Amanda Cardwell, Plaintiff's friend, Cardwell remarked that Plaintiff gets the shakes when using a nebulizer. (R. 28.) Cardwell also noted that Plaintiff has daily struggles with breathing and needs to rest when doing household chores. *Id.* Finally, Cardwell noted that Plaintiff tried to work a couple of months but was unable to continue the job. *Id.* The ALJ gave "little weight" to Cardwell's opinion, which he found to be a non-medical source who had not seen Plaintiff in a professional capacity in connection with her impairments. *Id.*

The ALJ noted that Cardwell was not a medical provider, her opinion rested in large part on Plaintiff's subjective reports, and the severity of these allegations did not comport with the record provided by treating or examining medical sources. *Id.*

The ALJ's credibility analysis, in pertinent part, provides as follows:

> [T]he claimant does have severe impairments that limit her ability to perform work related functions. However, the issue here is not whether the claimant can be restored to full health, or even rendered free from pain. Rather, an individual's residual functional capacity (RFC) is what the individual can still do despite his or her limitations. Viewed in this light, to the extent that the claimant alleges limitations greater than those set forth in the current residual functional capacity, those claims are not supported by the evidence.
>
> In terms of the claimant's physical issues, . . . [w]hile the claimant does have diagnoses for asthma and COPD, it is noted that the only pulmonology examination appearing of record, from Dr. Dietrich, did not produce a diagnosis for COPD and spirometry testing indicated only borderline restriction. The undersigned also notes that during a September 13, 2012 appointment with Coastal Carolina Health Care, the claimant reported that she had never been seen by a pulmonologist, despite the fact that her last examination by Dr. Dietrich had been less than a year earlier. Furthermore, while the record retlects multiple recommendations for smoking cessation, as of the hearing date the claimant continued to smoke.

(R. 25-26.)

The Magistrate Judge concluded that the ALJ erred by failing to evaluate Plaintiff's testimony about her nebulizer use and the time it takes her to recover. M&R [DE-22] at 9. The Magistrate Judge further determined that it was unclear what portions of Plaintiff's testimony and the record evidence the ALJ found credible, or not credible, and why. *Id.* The Magistrate Judge acknowledged that the Commissioner offered several explanations regarding why Plaintiff did not need to use a nebulizer, but he concluded that this was a determination for the ALJ in the first instance because the reviewing court is prohibited from engaging in post-hoc rationalizations offered in support of administrative agency decisions. *Id.* at 9-10.

7

This court agrees with the Magistrate Judge that the ALJ erred by failing to evaluate Plaintiff's testimony about her nebulizer use and the time it takes her to recover from each use. Moreover, this court finds Defendant's argument in favor of a post-hoc rationale to be wholly without merit. In particular, Defendant argues that she should be allowed to "embellish the rationale of the ALJ to show substantial evidence supports the ALJ's determination." Objection [DE-23] at 4. This court disagrees. Pursuant to the so-called "*Chenery* Doctrine," courts are prohibited from considering post-hoc rationalizations offered in support of administrative agency decisions. *Johnson v. Colvin*, No. 1:15CV538, 2016 WL 6106439, at *5 (M.D.N.C. Oct. 19, 2016). When the grounds are inadequate or improper, a reviewing court is precluded from affirming the administrative decision by substituting the more adequate or proper basis. *Id.* For these reasons, Defendant's sole objection is overruled.

## II. CONCLUSION

In light of the foregoing, and upon *de novo* review of the portions of the Magistrate Judge's M&R to which specific objections were filed, the court ADOPTS the findings and recommendations of the Magistrate Judge, Plaintiff's Motion for Judgment on the Pleadings [DE-16] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] is DENIED, and the case is REMANDED to the Commissioner for further proceedings.

The Clerk of Court is DIRECTED to close the case.

SO ORDERED.

This, the 2۴ day of March, 2017.

JAMES C. FOX
Senior United States District Judge

8